DEVIN, J., took no part in the consideration or decision of this case.
This is a civil action to recover disability benefits upon a $5,000 life insurance policy containing a provision known as a total and permanent disability clause, which is to the effect that upon the insured's becoming disabled by injury or disease that wholly prevents him from performing any work or engaging in any business for remuneration or profit, occurring after said insurance policy took effect and before the insured was 60 years old, he shall be entitled to a waiver of further premiums and $10.00 per month for each $1,000 insurance set forth in the face of the policy, upon proof that the insured will be continuously and totally disabled for life.
It is admitted by the defendant that a policy with the total and permanent disability clause was issued by it to the plaintiff on 8 October, 1926, and that the premiums were paid thereon up to the time of filing claim thereunder, and that proof of claim was duly made in August, 1932, by the plaintiff for the sum of $50.00 per month from September 1, 1932. However, the defendant averred in its answer that the policy was procured by false and fraudulent representations made in the application therefor, and that the disease causing plaintiff's disability existed prior to the issuance of the policy, and declined to pay the disability *Page 506 
benefits, and gave notice of its election to rescind the provision for such benefits in the policy, and tendered the amount of premiums for theretofore paid therefor.
The plaintiff declined to accept the tender of the amount of premiums paid and filed a reply wherein he alleged that if any false statements were made in the application for the insurance policy, they were made with the knowledge of the defendant's soliciting agent and medical examiner of their falsity, and that the company thereby waived any defense grounded upon such statements, and is estopped to set up such defense, and that the disability occurred after the issuance of the policy.
The case came on for trial and at the close of the plaintiff's evidence the court granted the defendant's motion for judgment as of nonsuit, and further ordered and adjudged, upon the pleadings and evidence, that the permanent disability provision in the policy be canceled. From this judgment the plaintiff appealed, assigning errors.
The provision of the policy under which the plaintiff claims is as follows: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of the policy on which the insured's age at nearest birthday is sixty."
It should be noted that the disability benefits under the policy are specifically excepted from the incontestability clause thereof, said clause being in the following words: "This policy shall be incontestable after two years from its date of issue, except for nonpayment of premium, and except as to provisions and conditions relating to disability and double indemnity benefits."
The plaintiff contended and offered his own testimony and other evidence tending to prove that his eyes were good when the policy was issued and took effect in 1926, and gave him no trouble at that time, and that he was in good health and under no disability until January, 1932, and that he filed claim in August, 1932, and that when the policy was sold to him in 1926 he was not nineteen years old and had several years before been a pupil in a school conducted by the agent of the defendant who solicited his insurance, that he was wearing glasses at the time, and told her about his eyes having been treated, and that he accepted the statement of that agent when she told him that the treatment of his eyes made no difference; that the agent filled out the application and sent him *Page 507 
to the doctor, that the doctor had personally known him for nine years, and had had an office within 50 yards of his father's store, where the doctor was seen by the plaintiff practically every day, and where the plaintiff went several times a week; that in making the examination the doctor asked him only four or five questions and nothing about his eyes, although he had glasses on at the time and would have told him about his eye treatment if the doctor had asked him; that in signing the paper containing the questions and answers he did as directed by the doctor, and did not know he was responsible for what the doctor had written, and in putting his name on the paper he obeyed the doctor, whom he, as a child, had obeyed many times before; that he is now totally and permanently disabled by practical blindness caused by glaucoma simplex.
The "Answers to the Medical Examiner," which is a part of the policy upon which this action is based and which was introduced in evidence, contains, among other questions and answers, the following: "7. A. Have you had any accident or injury or undergone any surgical operation? Yes, appendicitis, 12 years ago. Operation. Recovery. 7. B. Have you been under observation or treatment in any hospital, asylum, or sanitarium? Yes, appendicitis. . . . 8. D. Have you consulted a physician for or suffered from any ailment or disease of the skin, middle ear, or eyes? No. . . . 10. Have you consulted a physician for any ailment or disease not included in your above answers? Yes, malaria fever, 1922, two weeks, moderate, recovery."
The plaintiff stated on cross-examination that the first time he went to the hospital for trouble with his eyes was in 1925, and that before that he had consulted Dr. Daniels of New Bern and brought glasses, and that Dr. Daniels had told him that he had a decayed nerve of the right eye, and that about six months after consulting Dr. Daniels he went to Johns Hopkins Hospital and there consulted Dr. McLean for treatment on 16 September, 1925, and that Dr. McLean performed an operation on his eye, he bored a hole in it and put a little gold wire in the eye, that Dr. McLean operated the first time he consulted him, and that the eye did not pain him any more until 1926, at which time he made a second visit to Dr. McLean and he performed another operation in his other eye and told him that the condition which existed in September, 1925, had spread to the other eye, that the operation on his left eye was a different operation, a trephine, the doctor just opened the eye but did not put a wire in this one.
On further cross-examination the plaintiff also stated: "I found my statement in the application was false; I did not know it then; I found out it was false when the company sent me the check, for the return premiums; the statement about my eyes is not true, but I didn't make it; the one about not having consulted a physician in the last five years is not true; if the operation on the eyes was a surgical operation, my *Page 508 
statement that the operation for appendicitis was the only operation I had had was not true; I don't know if I would call the eye operation a surgical operation. When I stated that malaria was the only disease I had had, that was not true. I don't know that I would call it a surgical operation. Except as to my eyes I had not been treated by a doctor within five years next to the date of the policy, except for malaria."
When asked why he did not tell about the operations on his eyes at the time he was asked if he had consulted a doctor about any other disease, the plaintiff said: "I don't know. I didn't have my mind on my eyes then. I had on glasses; it looks to me like he would have asked me about my eyes." The plaintiff further testified that he knew he was undergoing a physical examination for the purpose of finding out whether he was able to get the policy, and when asked why he did not tell the doctor what he told the soliciting agent, said: "I thought he was going to make the examination; I didn't know it was a questionnaire"; and further stated, "If he didn't find it out, I was not going to tell him; it looks to me like he could find it out; I knew it; I never told him because he didn't ask me anything about it, and I knew at the time that I had had treatment for my eyes, that a wire had been put in my right eye, and that it had been drained, and that another operation had been performed on my left eye during my second trip to Baltimore."
It appears from the plaintiff's own testimony that he withheld from the medical examiner of the company the fact that he had been but a short time previously to Johns Hopkins Hospital in Baltimore and had had an operation performed upon one eye within shortly over a year before making the application for insurance, and upon the other eye in considerably less than a year before. It is also apparent that the representations made by the plaintiff to the defendant's medical examiner to the effect that he had not been in a hospital and that he had not been treated by any physician except for appendicitis and malaria, when as a matter of fact he had been in the hospital and had both of his eyes operated on, were false representations of material facts.
The questions and answers contained in the medical examination are followed by this provision: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete, and true, and agree that the company believing them to be true shall rely and act upon them," and immediately following this provision is the plaintiff's signature.
The attending physician's report on the claim for disability filed by the plaintiff on 18 August, 1932, shows that his "first consultation in the present disability" of the plaintiff was held on 16 September, 1925, and that the date of the "onset of the present disability" was about *Page 509 
September, 1924, and that his diagnosis of the "disease . . . causing the present disability" was glaucoma simplex.
We do not think that this case falls within those cases which hold that, in the absence of fraud or collusion between the insured and the soliciting agent, the knowledge of the agent, when acting within the scope of the powers entrusted to him, of any misstatement of facts will be imputed to the company, although the policy contains stipulations to the contrary, and that such imputed knowledge constitutes a waiver of any defense upon the ground of such misstatements and is an estoppel to the setting up of such defense. The distinction between those cases and the instant case is that in the former the agents of the insurers were informed of the true facts, but did not convey them to the insuring companies by truthfully filling out the answers to the questions contained in the applications or otherwise, whereas in the instant case there was a suppression of the truth from the medical examiner who filled out the questionnaire, by which he was deceived, and which caused him to convey to the company false information, the falsity of which was known to the insured but unknown to the medical examiner, or the insurer. The fact that the plaintiff had told the soliciting agent that he had had trouble with his eyes and had had them treated, and the facts that the medical examiner of the company knew him from boyhood and knew he wore glasses were not sufficient to impute to the company knowledge of the fact that he had been in a hospital and had his eyes operated upon — especially is this so in the face of this statement to the contrary made to the medical examiner of the company.
We conclude and hold that by reason of the false statements of material facts made by the plaintiff to the medical examiner of the defendant, and of the suppression of material facts as to his insurability, the plaintiff is not entitled to recover in this action, and that the defendant is entitled to have the disability provisions of the policy sued upon rescinded upon the return by it to the insured of the amount of the premiums paid therefor, with interest.
It would seem further that the total and permanent disability clause of the policy was not applicable to the plaintiff's present disability for the reason that the evidence tends to show that it did not occur after the policy sued on took effect, since, according to the report of the physician filed with the application for disability benefits, the "onset of the present disability" was in 1924, and that his "first consultation in the present disability" was in 1925, and that the policy did not take effect until 1932.
The judgment of the Superior Court is
Affirmed.
DEVIN, J., took no part in the consideration or decision of this case. *Page 510