THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED
STATES v. JOHN L. ASHBY.

(Filed 22 March, 1939.)

**1. Insurance § 31b—**

Written representations in answer to written questions in regard to previous hospitalization, treatment by a physician within the prior five years, and certain specified diseases, which induce insurer to assume the risk, are deemed material representations as a matter of law.

**2. Same—**

A policy not issued under the provisions of C. S., 6460, may be avoided for material misrepresentations which induce insurer to take the risk which it would not otherwise have taken, even in the absence of fraud, and therefore insurer need not prove that the misrepresentations were intentionally made.

**3. Same: Insurance § 31c—Insured may not defeat forfeiture on ground that he was ignorant of misrepresentations in application signed by him.**

The policy in suit provided that the statement of insurer's medical examiner, signed by insured, should be a part of the contract between the parties. It appeared that this statement contained representations that insured had not been treated in any hospital, had not suffered any disease of the nose, throat, or lungs, and had not consulted a physician for the prior five years, and that insured signed under a statement that the representations therein were true and made as an inducement for the issuance of a policy. This action was instituted to cancel the disability clause, which was not covered by the incontestability clause, for material misrepresentations, and insured admitted that less than five years prior to his application he had been treated in a hospital for pleurisy. Insurer contended that the tuberculosis causing insured's disability was a recurrence or continuation of the same disease. Insured contended that he was ignorant of the misrepresentations in the examiner's statement, that they were written by the examiner and that insured signed same without reading it because he was in a hurry. *Held:* The misrepresentations were material as a matter of law and insurer is entitled to forfeiture upon insured's admission that they were false, there being no evidence that insurer's examiner had any personal knowledge as to the truth or falsity of the representations, and it appearing that insured signed same and adopted the statements as his own, carelessly and negligently without reading it.

STACY, C. J., concurring.

CLARKSON, J., concurs in the concurring opinion.

APPEAL by defendant from *Clement, J.,* at September Term, 1938, of SURRY.   No error.

Civil action to cancel and rescind the total and permanent disability and double indemnity provisions contained in a life insurance policy.

The plaintiff contends that the issuance of the policy containing said provisions was based upon representations made in the application for the policy and in the application, Part II, being statements made to the medical examiner; that certain of the representations in the application, Part II, were material and false and by reason thereof the total and permanent disability and the double indemnity clauses in said policy are void.   Under the contract of insurance the application, Part I, being the application signed and delivered to the soliciting agent, and the application, Part II, being the statement signed and delivered to the medical examiner, became and are a part of the contract of insurance.

The plaintiff alleges that in his statement to the medical examiner the insured falsely represented: (1) That he had never been under observation or treatment in any hospital, asylum or sanatorium; (2) that he had never been treated for any disease or disturbance of the nose, tonsils, throat or lungs (hay fever or rose fever); (3) that he had never had any illness or injury not mentioned above; (4) that he had not consulted any physician or practitioner who had treated him during the past five years; and that in the written representations so made the following provision was incorporated: "I agree that the foregoing answers shall be part of my application, which shall consist of Parts I and II taken together, and that the foregoing answers shall also become part of any policy contract that may be issued on the strength hereof."

In respect thereto the plaintiff offered evidence tending to show that the defendant was a patient in the Martin Memorial Hospital at Mount Airy, N. C., from 31 August, 1928, to 6 October, 1928, and that following this he convalesced at his home for two or three weeks before he returned to work; that at the time he was confined in the sanatorium he was suffering from pleurisy with effusion on his left side; that he ran a temperature and it was necessary that he be aspirated and the fluid in the lung cavity drawn off; that he was treated by his brother, Dr. E. C. Ashby, and by Dr. P. A. Yoder, a tuberculosis specialist; that he developed tuberculosis, which was discovered in June, 1934; and that the attack of tuberculosis of 1934 was a different manifestation of the same trouble evidenced by the pleurisy attack in 1928.

In his answer the defendant admits that the application, Part II, was signed by him; that he was confined in the Martin Memorial Hospital in the year 1928 with an attack of pleurisy and that the application, Part II, signed by him, contained certain questions and answers thereto, but denies that he made answers to any questions propounded therein,

except to state to the examining physician that many years ago he had an operation. He alleges that the examining physician was the agent of the plaintiff in this cause and as such answered such questions without asking the defendant anything in relation thereto.

Issues were submitted to and answered by the jury as follows:

"1. Did John L. Ashby represent in his application for the insurance policy sued on that he had never been under observation or treatment in any hospital, asylum or sanatorium? A. 'Yes.'

"2. Was the said representation true? A. 'No.'

"3. Did John L. Ashby represent in his application for the insurance policy sued on that he had not been treated for any disease or disturbance of the lungs? A. 'Yes.'

"4. Was the said representation true? A. 'No.'

"5. Did the said John L. Ashby represent in his application for the insurance policy sued on that he had not had any illness or injury other than a tonsillectomy? A. 'Yes.'

"6. Was said representation true? A. 'No.'

"7. Did John L. Ashby represent in his application for the insurance policy sued on that he had not consulted or had not been treated by any physician or practitioner within five years prior to the signing of said application? A. 'Yes.'

"8. Was said representation true? A. 'No.'

"9. Was John L. Ashby a patient in the Martin Memorial Hospital at Mount Airy, North Carolina, from August 31, 1928, to October 6, 1928? A. 'Yes.'

"10. Did the said John L. Ashby, while a patient in the Martin Memorial Hospital from August 31, 1928, to October 6, 1928, receive treatment for any disease or disturbance of the lungs? A. 'Yes.'

"11. Did the said John L. Ashby, in September, 1928, suffer from an illness resulting from pleurisy? A. 'Yes.'

"12. Did the said John L. Ashby, during the year 1928, consult with and receive treatment from Dr. Edward C. Ashby or any other physicians or practitioners? A. 'Yes.'"

Thereupon judgment was entered decreeing that the provisions contained in the policy sued upon relating to total and permanent disability and for double indemnity for death by accident as contained on page 2-A, Policy No. 8707102, are void and of no effect upon the date of issuance of said policy, and rescinding said provisions. The defendant excepted and appealed.

*Manly, Hendren & Womble, I. E. Carlyle, and Folger & Folger for plaintiff, appellee.*

*Woltz & Barber and E. C. Bivens for defendant, appellant.*

BARNHILL, J. The medical examiner wrote in the answers to the questions contained in application, Part II. He testified as to a number of these questions that he received the information upon which he based the answer from the applicant. As to the particular questions and answers in issue he testified: "I must have received the information from the insured." The defendant denied that he gave the medical examiner the information upon which said answers were based, but testified that the medical examiner made a physical examination, asked him a few questions, filled in the answers and told him to sign the statement. He further stated that he signed the statement containing the answers without reading them because he was in a hurry. He makes no contention that the medical examiner knew that he had been confined in a sanatorium or that he had suffered an attack of pleurisy, or had been under the care of physicians. On the contrary, all the evidence tends to show that the medical examiner had no information as to the representations concerning which issues were submitted to the jury. So far as the record discloses the defendant does not contend to the contrary.

Is the falsity of the representations contained in application, Part II, which forms a part of the contract of insurance, made in a written statement which was signed but not read by the insured, sufficient cause for rescinding so much of the contract of insurance as is not protected by the incontestability clause?

The representations made were material to the risk. They are in the form of written answers made to written questions. In such case the questions and answers are deemed to be material by the acts of the parties to the contract. *Bryant v. Ins. Co.,* 147 N. C., 181, 60 S. E., 983; *Ins. Co. v. Woolen Mills,* 172 N. C., 534, 90 S. E., 574; *Inman v. Woodmen of the World,* 211 N. C., 179, 189 S. E., 496; *Petty v. Ins. Co.,* 212 N. C., 157, 193 S. E., 228.

Except in policies issued under provisions of C. S., 6460, material representations which are false need not be fraudulently made to invalidate the policy. "In cases where the misrepresentation is positive and of a fact actually material, it is not necessary to prove that the representation was fraudulently made; the materiality of the misrepresentation, and its proven falsity does away with the necessity of showing actual fraud." Joyce on Insurance, Vol. 3, Second Ed., page 3068. "The effect of a misrepresentation of a material fact has precisely the same effect as a concealment, it renders the policy voidable. The misrepresentation need not be fraudulent to have this effect. Falsity in fact is sufficient." Richards on the Law of Insurance, Fourth Ed., page 136. Such representations when false invalidate the policy without further proof of actual conscious design to defraud. *Mutual Life Insurance Co. v. Hilton-Green,* 241 U. S., 613, 60 L. Ed., 1202. The

decisions in this court are consistently to like effect. *Bobbitt v. Ins. Co.,* 66 N. C., 70; *Ins. Co. v. Woolen Mills, supra; Inman v. Woodmen of the World, supra; Petty v. Ins. Co., supra.*

An intentional misrepresentation of a material fact is fraudulent. It need not appear, therefore, that the representation was intentionally made. *Mutual Life Insurance Co. v. Hilton-Green, supra,* in which *Mr. Justice McReynolds,* speaking for the Court, said: "Considered in the most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud." *Ins. Co. v. Woolen Mills, supra; Petty v. Ins. Co., supra; McEwen v. Life Insurance Co.,* 139 Pac., 242.

A representation of a fact may be false or untrue through mistake, ignorance, accident or negligence, in which case, if it induces the risk which the insurer would not otherwise have taken, it is material. . . . It is now well settled that in cases of the character above specified the misrepresentation of a material fact preceding or contemporaneous with the contract avoids the policy even though the assured be innocent of fraud or an intent to deceive or to wrongfully induce the assurer to act, or whether the statement was made in ignorance or good faith, or unintentionally. A mere inadvertent omission of material facts which the assured should have known to be material, will avoid the contract if false and relied on by the assurer. Joyce on Insurance, Vol. 3, Second Ed., page 3073. "The applicant did not read the application or request that it be read to him before he signed it. His failure to do either was not induced by any fraud on the part of the agent. When he signed the application, he knew that the agent had written answers to the questions contained in it. He represented to the defendant that these answers were true." *Inman v. Woodmen of the World, supra.*

As stated, it is settled law in North Carolina that answers to specific questions, like those asked in the instant case, where there has been a medical examination, are material as a matter of law. The defendant went to the medical examiner with the full knowledge of the purpose of his visit. He knew that the examiner had written answers to questions appearing upon the blank then being used by him and he makes no suggestion that the examiner had any knowledge of his former illness or his prior confinement to a sanatorium. Neither does he suggest that the examiner acted other than in the utmost good faith. He signed the instrument, knowing that by so doing he was adopting such answers as had been entered as his own, and that he was representing to the company that they were true. Thereafter he received the policy with a photostatic copy of the questions and answers attached, which policy he

kept in his possession for a period of years without discovering the falsity of the representations he had made, or, having discovered them, without advising the company of the misstatements therein contained. On the other hand, the plaintiff acted promptly to have the provisions of the policy not protected by the incontestability clause rescinded as soon as it acquired knowledge of the fact that the representations contained in the application were not true.

The defendant is a man of education and professional training, and it is not unreasonable to assume that he knew the company wished to know and was seeking to ascertain whether he had suffered any illness, such as that now disclosed, prior to the acceptance of the application. He cannot now successfully defend upon the only plea he now asserts—that the answers were made by the medical examiner and that he signed the statement without reading it because he was in a hurry. However innocently he may have acted, the present situation grows out of his own carelessness and negligence, through which he obtained a policy that otherwise would not have been issued. It would be inequitable and contrary to the consistent decisions of this Court to permit him to insist upon the validity of a contract thus obtained. As it is, he now has the benefit of the life policy benefits of the contract by virtue of the incontestability provisions of the policy, notwithstanding the fact that it was issued by the plaintiff without knowledge of facts which would have materially influenced it in accepting or rejecting the applicant.

It may be noted that the defendant makes no attack on the application, Part I, which he signed and delivered to the soliciting agent. Neither does he contend that he failed to read this instrument before signing it. He therein agreed "that no agent or other person except the president, a vice president, the secretary, the treasurer, or a registrar of the society, has power to make or modify any contract on behalf of the society or to waive any of the society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers. All of the foregoing answers and all those contained in Part II hereof (the statements to the medical examiner) are true, and are offered to the society as an inducement to issue the policy, or policies, for which application is hereby made."

There was no conflict in the testimony as to the essential facts to be determined. The evidence tends to show, without contradiction, that the defendant signed and filed with the plaintiff a paper writing containing the representations referred to in the issues submitted; that they were false; that the medical examiner had no personal knowledge as to their truth or falsity; that the defendant carelessly and negligently signed the instrument without reading it and thereby adopted the statements as his own. They were material as a matter of law. Therefore,

we consider that the exceptions to the charge of the court are without merit. Nor can the defendant's exceptions to the admission of evidence be sustained.

No error.

STACY, C. J., concurring: It is provided by C. S., 6289, that statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy. *Howell v. Ins. Co.,* 189 N. C., 212, 126 S. E., 603.

Here, the plaintiff seeks to avoid the provisions of the policy relating to disability and double indemnity, *Smith v. Ins. Co.,* 209 N. C., 504, 184 S. E., 21, on the ground of false and material representations appearing in the application, and recovery has been allowed on this ground. *Schas v. Ins. Co.,* 166 N. C., 55, 81 S. E., 1014. Ordinarily, the falsity and materiality of such representations are for the jury to determine under proper instructions from the court. *Anthony v. Protective Union,* 206 N. C., 7, 173 S. E., 6; *Harrison v. Ins. Co.,* 207 N. C., 487, 177 S. E., 423, and cases there cited. In the instant case, however, the falsity of the statements being conceded, under the decisions applicable, their materiality may be determined as a matter of law. *Bryant v. Ins. Co.,* 147 N. C., 181, 60 S. E., 983; *Jeffress v. Ins. Co.,* 72 F. (2d) 874. The allegation of negligence or carelessness on the part of the examining physician is not sufficient to save the defendant from the consequences of the misrepresentations appearing in the application. *Inman v. Woodmen of the World,* 211 N. C., 179, 189 S. E., 496.

CLARKSON, J., concurs in this opinion.