Flossie MATHIS, Plaintiff,

v.

The MINNESOTA MUTUAL LIFE INSURANCE COMPANY and the Federal Land Bank of Columbia, Defendants.

No. C–171–W–67.

United States District Court
M. D. North Carolina,
Wilkesboro Division.

Aug. 12, 1969.

McElwee & Hall, North Wilkesboro, N. C., for plaintiff.

Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., for The Minnesota Mut. Life Ins. Co.

J. C. Woodall, Columbia, S. C., for The Fed. Land Bank of Columbia.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWIN M. STANLEY, Chief Judge.

This is an action by the plaintiff, Flossie Mathis, to collect the proceeds of a life insurance policy issued by defendant, The Minnesota Mutual Life Insurance Company, on the life of DeArville Mathis, plaintiff's deceased husband.

The case was tried by the Court without a jury. The evidence consists of the pleadings, stipulations, answers to inter-

rogatories, answers to requests for admissions, affidavits, exhibits, and discovery depositions.

After considering the entire record, including briefs filed and arguments of counsel, the Court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## FINDINGS OF FACT

1. The plaintiff is a citizen and resident of Wilkes County, North Carolina.

2. The defendant, The Minnesota Mutual Life Insurance Company (hereinafter referred to as Minnesota Mutual), is a corporation organized and existing under the laws of the State of Minnesota with its principal office and place of business in St. Paul, Minnesota.

3. The defendant, the Federal Land Bank of Columbia (hereinafter referred to as Federal Land Bank), is a corporation maintaining its principal office and place of business in Columbia, South Carolina.

4. Some time in advance of October 18, 1966, DeArville Mathis applied for, and had approved, a mortgage loan from the Federal Land Bank in the amount of $20,000.00.

5. On October 18, 1966, the aforementioned loan was closed in the office of J. H. Whicker, Sr., an attorney in North Wilkesboro, North Carolina. Among others present at the closing of the loan was John H. Hollar, of Boone, North Carolina, an employee of the Federal Land Bank. On said occasion, Hollar was likewise a duly appointed and acting agent of Minnesota Mutual.

6. At the time the mortgage loan was closed in the office of J. H. Whicker, Sr., on October 18, 1966, DeArville Mathis signed a blank form making application for a policy of credit life insurance in the amount of $20,000.00 with Minnesota Mutual, covering his indebtedness to the Federal Land Bank.

7. On October 26, 1966, Minnesota Mutual issued its policy of credit life insurance No. 3041–W, insuring the life of DeArville Mathis up to $20,000.00, but not to exceed the unpaid balance due on the loan to the Federal Land Bank.

8. The application for the credit life insurance was procured by Hollar as the agent of Minnesota Mutual, and in the taking of said application Hollar was acting within the scope of his agency and authority.

9. On October 26, 1966, DeArville Mathis was indebted to the Federal Land Bank in the amount of $20,527.41, and on February 12, 1967, the amount of said indebtedness was $20,845.02.

10. Policy No. 3041–W, issued by Minnesota Mutual to DeArville Mathis, related to the loan procured by DeArville Mathis from the Federal Land Bank, said loan being designated on the books of the Federal Land Bank as Loan No. 247290.

11. DeArville Mathis died on February 12, 1967, in Wilkes County, North Carolina, and at the time of his death was a resident of Wilkes County, North Carolina.

12. At the time of the death of DeArville Mathis on February 12, 1967, all premiums then due on Policy No. 3041–W had been fully paid.

13. Subsequent to the death of DeArville Mathis, a proof of loss in due form, and in compliance with the terms of the policy, was submitted to Minnesota Mutual for the payment of the benefits pursuant to the terms of said insurance policy. Payment was declined by said defendant, but all premiums paid on said policy were tendered to the plaintiff.

14. Plaintiff was a tenant by the entirety with her husband, DeArville Mathis, of the land conveyed to the Federal Land Bank securing Loan No. 247290, and the deed of trust securing the loan represents a lien or encumbrance upon the land therein described.

15. The application for Policy No. 3041–W contained blank spaces for the

name of the applicant, the address of the applicant, the birth date, height, and weight of the applicant, and required answers to the following questions:

"6. Do you know of any impairment now existing in your health or physical condition?

Yes————— No—————

If 'Yes', give particulars—————

"7. Have you had any illness during the last three years:

Yes————— No—————

If 'Yes' give approximate dates with particulars, including names of attending physicians, if any,

—————————————————

—————————————————."

16. When the application was completed, an "X" was inserted after the word "No" in questions 6 and 7, thus indicating negative answers to both questions.

17. The application, containing the aforesaid answers to questions 6 and 7, was attached to Policy No. 3041–W and delivered to DeArville Mathis before his death on February 12, 1967.

18. The answers to questions 6 and 7 in said application were false for the reasons, among others, that DeArville Mathis was, at the time he signed the application, under the care of Dr. Hal B. Hawkins of North Wilkesboro, had been examined by a doctor in November of 1962 for a disability determination, and had been hospitalized in the Wilkes Memorial Hospital from January 28, 1966, through February 4, 1966. Moreover, a serious coronary disease and congestive heart failure had previously been diagnosed by Dr. Hawkins, and DeArville Mathis had not worked regularly since 1962 because of his health.

19. The false answers appearing in the application signed by DeArville Mathis, which application was attached to and constituted a part of Policy No. 3041–W, were material to the risk assumed by Minnesota Mutual and said defendant would not have issued said policy had it known the true facts with regard to the health of DeArville Mathis.

20. While DeArville Mathis was not illiterate, he had very little formal education and had difficulty in reading and writing.

21. Said contract of insurance, No. 3041–W, provides, among other things, that the balance remaining after the payment of the indebtedness to the Federal Land Bank should be paid to the wife of the insured, the plaintiff herein.

22. At the time of the initial pretrial conference, it was stipulated that if the plaintiff prevailed in the action, the judgment would be drawn in favor of the plaintiff and the Federal Land Bank, as their interests might appear, and that it would be unnecessary for the Bank or its counsel to attend further conferences, hearings on motions, or the trial of the action.

23. The parties are in sharp disagreement with respect to the facts surrounding the signing of the application for the subject policy of life insurance by DeArville Mathis on October 18, 1966. From the entire record, it is found that immediately after the signing of the loan papers in the office of J. H. Whicker, Sr., on October 18, 1966, Hollar asked DeArville Mathis to sign a blank application for a policy of credit life insurance to cover the loan, which was done. At no time did Hollar, nor anyone else acting on behalf of Minnesota Mutual, ask DeArville Mathis any questions concerning his health or physical condition, or any questions relating to any recent illness. After Hollar returned to his office in Boone, North Carolina, he instructed his secretary to complete the application form by supplying answers to the information required by the form, particularly the answers to questions 6 and 7. At no time prior to the issuance of said policy of insurance did DeArville Mathis, nor anyone acting on his behalf, furnish Minnesota Mutual, nor anyone acting on its behalf, the answers appear-

ing to questions 6 and 7 in the application form.

24. The policy of credit life insurance No. 3041–W, with a copy of the application signed by DeArville Mathis attached thereto, was delivered to the said DeArville Mathis by Minnesota Mutual several weeks prior to the death of DeArville Mathis. There is no evidence as to whether DeArville Mathis ever examined or read the policy of insurance. DeArville Mathis did, however, retain the policy, and failed to notify Minnesota Mutual with respect to the false information appearing in the application.

25. While there is no evidence that either Minnesota Mutual or Hollar knew that the answers to questions 6 and 7 in the application were false, the evidence does establish that Hollar, as agent for Minesota Mutual, inserted the answers to said questions with total indifference as to their truth or falsity.

26. There is no evidence of any collusion between Hollar and DeArville Mathis.

## DISCUSSION

It is conceded that Minnesota Mutual, on October 26, 1966, duly executed, and shortly thereafter delivered to DeArville Mathis its policy of credit life insurance No. 3041–W in connection with Loan No. 247290 with the Federal Land Bank, that said policy was in full force and effect when DeArville Mathis died on February 12, 1967, and that a proof of loss in due form, and in full compliance with the terms of the policy, was timely submitted to Minnesota Mutual. It is further conceded that Minnesota Mutual declined to pay said insurance benefits, other than to tender to the plaintiff the premiums paid before the death of DeArville Mathis, which were declined. These conceded facts clearly entitle plaintiff to prevail, unless there are additional facts and circumstances sufficient to defeat her claim.

Minnesota Mutual contends that since the answers to questions 6 and 7 in the application were admittedly material and false, and since the policy of insurance, with the application attached, was accepted and retained by DeArville Mathis, he is conclusively presumed to have had knowledge of the contents of the application, and to have ratified any false statements contained therein. Under such circumstances, it is argued that the plaintiff is estopped to claim that DeArville Mathis did not make the false representations contained in the application.

While it is uniformly held that representations made by an insured which are false and material are sufficient to defeat recovery on a life insurance policy,[1] it is the contention of the plaintiff that since, by statute, Hollar was the agent of Minnesota Mutual, not DeArville Mathis, in accepting and completing the application,[2] and since the misrepresentations appearing in the application were inserted by the agent of Minnesota Mutual without the participation, aid or assistance of her deceased husband, Minnesota Mutual may not assert the misrepresentation as a defense.

In Cuthbertson v. North Carolina Home Ins. Co., 96 N.C. 480, 2 S.E. 258 (1887), a case relied upon by Minnesota Mutual, the insurance company defended on grounds that the insured had falsely represented his interest in the property insured. The insured proposed to prove that the questions referred to were not asked, and that he signed the application without knowledge of its contents. The evidence was excluded. In holding that there was no error in excluding the proposed evidence, the Supreme Court stated that "[i]n the absence of fraud or mistake, a party will not be heard to say that he was ignorant of the contents of a contract signed by him." Significantly, the application had already been completed by the agent for the insurance company when it was signed by the plaintiff.

1. Jones v. Home Security Life Insurance Company, 254 N.C. 407, 119 S.E.2d 215 (1961).

2. N.C.G.S. § 53–197.

In Equitable Life Assur. Soc. v. Ashby, 215 N.C. 280, 1 S.E.2d 830 (1939), an action to cancel and rescind the total and permanent disability and double indemnity provisions contained in a life insurance policy, the insurance company alleged that the policy was issued upon material and false representations made in the application. The insured admitted signing the application containing material and false representations, but alleged that the answers were supplied by the examining physician, agent of the insurance company, rather than by himself. The Supreme Court, in holding that the insured was bound by the material and false representations contained in the policy, stated:

"He signed the instrument, knowing that by so doing he was adopting such answers as had been entered as his own, and that he was representing to the company that they were true. Thereafter he received the policy with a photostatic copy of the questions and answers attached, which policy he kept in his possession for a period of years without discovering the falsity of the representations he had made, or, having discovered them, without advising the company of the misstatements therein contained. On the other hand, the plaintiff acted promptly to have the provisions of the policy not protected by the incontestability clause rescinded as soon as it acquired knowledge of the fact that the representations contained in the application were not true.

"The defendant is a man of education and professional training, and it is not unreasonable to assume that he knew the company wished to know and was seeking to ascertain whether he had sufered any illness, such as that now disclosed, prior to the acceptance of the application. He cannot now successfully defend upon the only plea he now asserts—that the answers were made by the medical examiner and that he signed the statement without reading it because he was in a hurry. How-ever innocently he may have acted, the present situation grows out of his own carelessness and negligence, through which he obtained a policy that otherwise would not have been issued. It would be inequitable and contrary to the consistent decisions of this court to permit him to insist upon the validity of a contract thus obtained."

Here again, it is significant to note that the application containing the false representations had already been completed when it was signed by the insured.

Jones v. Home Security Life Insurance Company, 254 N.C. 407, 119 S.E.2d 215 (1961), a third case relied upon by Minnesota Mutual, involved an application for additional life insurance by a mother on the life of her child. The application contained admittedly false and material representations concerning the health of the child, but the mother proposed to show that the questions were not asked by the agent who took the application. There was no evidence suggesting that the insured was prevented from reading the questions or answers by any trick or device, or that the agent of the insurance company knew the answers appearing in the application were false. After restating the principle that the law presumes a person to know the contents of any statement signed, the court stated:

"We give our approval to the statement appearing in 29A Am.Jur. 236 that 'the rule that the insured is not responsible for false answers in the application where they have been inserted by the agent through mistake, negligence, or fraud is not absolute, and applies only if the insured is justifiably ignorant of the untrue answers, but has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud.'

"Insurer's lack of knowledge, actual or constructive, of the falsity of statements appearing in the application, distinguishes cases typified by Chavis v. Home Security Life Insurance Co.,

251 N.C. 849, 112 S.E.2d 574; Cato v. Hospital Care Ass'n, 220 N.C. 479, 17 S.E.2d 671; and Heilig v. Home Security Life Insurance Co., 222 N.C. 231, 22 S.E.2d 429, from this case."

The plaintiff relies upon another group of cases decided by the North Carolina Supreme Court which she contends, because of their factual similarity, should be controlling. The first of these cases is Cato v. Hospital Care Ass'n, 220 N.C. 479, 17 S.E.2d 671 (1941), which involved certain alleged material and false representations made by the insured in connection with an application for a policy of hospital insurance. The agent for the insurance company went to the home of the insured and obtained the signed application. The insured testified that the agent did not ask her any questions about her health, and that she was unable to read fine, or even normal, print because of defective eyesight. In affirming a judgment for the insured, the court stated:

"The defendant's agent, as was found by the jury (and there was competent evidence to sustain the finding), inserted in the certificate or application certain answers to questions, without the knowledge of plaintiff. The defendant may not now assert the falsity of the answers. Whitehurst v. Life Ins. Co., of Virginia, 149 N.C. 273, 62 S.E. 1067; Currie v. Malloy, 185 N.C. 206, 116 S.E. 564; Lunn v. Shermer, 93 N.C. 164."

Another decision relied upon by the plaintiff is Heilig v. Home Security Life Insurance Co., 222 N.C. 231, 22 S.E.2d 429 (1942), a case in which the insurance company defended on the grounds that certain answers in the application for insurance were false and material. The agent for the insurance company testified that he asked the insured all the questions in the application and that the application was signed in his presence by the insured. The evidence offered by the insured tended to show that the application for insurance was made by the insured's mother while the insured was living in New York. The mother testified that the agent only asked if her son was in good health, and the only information she supplied was that the last time she heard from him he was well. She further testified that she signed her son's name to the application. In affirming a judgment in favor of the insured, the court stated:

"The answers to other questions, if inserted by the agent, without the knowledge of the applicant, in the absence of fraud or collusion between the insured and the agent, will not vitiate the policy of insurance issued pursuant to the information contained therein. Cato v. Hospital Care Ass'n., 220 N.C. 479, 17 S.E.2d 671; Cox v. Equitable Life Assurance Society, 209 N.C. 778, 185 S.E. 12, 15.

" * * * Therefore, the jury having found that the insured did not make any false representations in the application for the insurance in controversy, the defendant is bound by the contract."

Chavis v. Home Security Life Insurance Company, 251 N.C. 849, 112 S.E.2d 574 (1960), is another case in which the insurance company defended on the grounds that the policy was obtained by false and fraudulent representations with respect to the health of the insured. The agent for the insurance company testified that the insured answered the questions, as recorded in the application, and signed it. The plaintiff offered evidence tending to show that the insured did not sign the application, and that it was procured by the beneficiary, the mother of the insured. The evidence further tended to show that the only question asked concerning the health of the insured was a general question, and that the only statement made concerning the health of the insured was "[h]er health is good as far as I know." In affirming the judgment for plaintiff, the court stated:

"Whether responsibility for the false answers was attributable to the insured or to the agent of the company was in serious dispute. There was

neither allegation nor proof of any collusion.

\* \* \* \* \* \*

"The case of Heilig v. Home Life Ins. Co., 222 N.C. 231, 22 S.E.2d 429, settles adversely to the defendant's claim the controlling issues of fact and questions of law involved in this appeal."

■ While admittedly not free of doubt, the Court is of the view that the cases relied upon by the plaintiff are controlling. In the cases cited by the defendant, it appears that the applications had been completed by the agent before they were signed by the insured, a fact not present in *Chavis, Cato* and *Heilig*. Moreover, in Jones v. Home Security Life Insurance Company, *supra*, the court gave its approval to a statement appearing in 29A Am.Jur. § 236 to the effect that an insured is not responsible for false answers in the application if he is justifiably ignorant of the untrue answers, had no actual or implied knowledge thereof, and had been guilty of no bad faith or fraud. There is no evidence that DeArville Mathis had any knowledge, actual or implied, of the untrue answers, or that he was guilty of any bad faith or fraud. Neither is there any evidence of collusion between Hollar and DeArville Mathis.

■ The Court is of the further view that the prevailing rule in North Carolina is stated in Appleman, Insurance Law and Practice, § 9401, as follows:

"An insurer is estopped from setting up a defense of fraud or negligence on the part of the insured in answering application questions, where such fraud or negligence was on the part of the insurer's agent. This rule applies with particular force where the false answers are inserted by the agent without the knowledge of the applicant, regardless of whether such statements be considered representations or strict warranties. Thus, where an application is prepared without even consult-

ing or interrogating the insured, and the insured had no knowledge of the making of such statements, much less their verity, an estoppel is certain to arise.

"Likewise, an insurer waives or is estopped to rely on representations contained in an application where the agent fills in the application without propounding any of the questions to the insured. Where an agent assumes the responsibility for answering the questions asked in the application, and answers falsely or incorrectly without the applicant having made any statements in connection therewith or knowing the manner in which they were answered, the insurer will be estopped to claim that the representations were false or incorrect. The insured cannot be called upon to bear the consequences, where the application is filled in by the agent from his own knowledge or from information in his possession.

" \* \* \* Mere constructive knowledge by the applicant of the falsity of warranted material answers fraudulently inserted by the insurer's agent will not avoid a policy, where it appears there was no fraudulent purpose or intent on the part of the applicant."

This unfortunate litigation would never have arisen had Hollar, as agent of Minnesota Mutual, followed the simple expediency of having DeArville Mathis supply and record answers relating to his health before signing the application. Since the answers appearing on the application were supplied by Hollar rather than DeArville Mathis, it follows that responsibility for the misrepresentations must lie with Minnesota Mutual.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and of the subject matter.

2. The defendant, Minnesota Mutual, is justly indebted to the plaintiff and the Federal Land Bank, as their interests might appear, in the sum of $20,000.00,

representing the benefits due under Policy No. 3041–W, issued on October 26, 1966, insuring the life of DeArville Mathis.

A judgment will be entered accordingly.