SOUTHEASTERN ASPHALT AND CONCRETE COMPANY, INC. v. AMERICAN DEFENDER LIFE INSURANCE COMPANY, GEORGE W. LITTLE & ASSOCIATES, INC. AND GEORGE W. LITTLE, INDIVIDUAL

No. 8320SC959

(Filed 19 June 1984)

1. Insurance § 18.1— life insurance—misrepresentations as to health

The answers given to questions relating to health on a life insurance form are deemed material as a matter of law.

2. Insurance § 18.1— life insurance—misrepresentations as to health

In order to avoid a life insurance policy because of answers to health questions on a reinstatement application, the insurer had only to show that the answers were material and false and did not have to show that the falsehoods were fraudulently made with an intent to deceive.

3. Insurance § 18.1— life insurance—false statements concerning health—genuine issue as to placement on application by agent without insured's knowledge

In an action to recover on a life insurance policy, a genuine issue of material fact existed as to whether false answers to health-related questions on an application for reinstatement of the policy were placed on the application by defendant's agent without first propounding any of the questions to the insured so as to preclude defendant insurer's avoidance of the policy on the basis of such false answers.

4. Insurance § 11— life insurance—statements by agent—no liability for insurer's avoidance of policy

Although an insurance agent's statements that he believed "there would be no problem" with a life insurance policy on corporate shareholders may have induced the shareholders to go ahead with an agreement for the corporation to purchase the shares of either shareholder in the event of his or her death since the insurance proceeds were to fund such purchase, the agent

could not be held liable to the corporate beneficiary when the insurer refused to pay because of false statements concerning the insured's health where there was no evidence that the agent's statements were made negligently or fraudulently in that there was no showing that the agent knew facts which would cause the insurer to seek avoidance of the policy.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 7 June 1983 in Superior Court, MOORE County. Heard in the Court of Appeals 6 June 1984.

*Van Camp, Gill & Crumpler by James R. Van Camp and Douglas R. Gill for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Theodore R. Reynolds and Benjamin F. Davis, Jr., for American Defender Life Insurance Company, defendant appellee.*

*Young, Moore, Henderson & Alvis by Joseph C. Moore, Jr. and Joseph W. Williford for George W. Little, defendant appellee.*

BRASWELL, Judge.

The plaintiff is the named beneficiary of an annually renewable term life insurance policy issued by the defendant, American Defender Life Insurance Company. When American Defender refused to pay on the policy, the plaintiff brought this action against the insurance company and against the insurance agent, George Little, whom the plaintiff claims made false assurances that American Defender would pay on the policy. Upon their motions, the trial court granted summary judgment in favor of the defendants. The plaintiff appeals.

The pertinent facts of this case follow. In 1979, Jerry Killian owned approximately 70% of the stock in the plaintiff-corporation. The remaining 30% was owned by Phyllis Taylor. Although they did not immediately enter into a stock purchase agreement, they began negotiating an agreement wherein the plaintiff-corporation would buy annual renewable term life insurance policies on each of them, naming the plaintiff-corporation as the beneficiary, in order to enable the corporation to buy the shares of either shareholder in the event of his or her death. They bought these policies from American Defender through its general agent George W. Little. The policy on the life of Jerry Killian which is the subject of this lawsuit was issued on 28

January 1980 in the amount of $500,000.00. The plaintiff paid the first year's premium at this time.

The second year's premium, however, due on 28 January 1981 was not paid and the policy lapsed. In late March or early April, the plaintiff sought to have the policy reinstated. The parties disagree as to how the reinstatement forms were delivered to the plaintiff and filled out. The plaintiff claims that the forms were sent through the mail, signed on 10 April 1981, and mailed back to the defendant-agent Little with the premium check. The defendants assert that Little, between 1 April and 10 April 1981 stopped by the plaintiff's office, filled in the data given by Killian, and left the forms with Killian and Taylor to sign and mail when they had the premium check ready. Despite this difference, the defendants admit that the substance of the reinstatement form was filled in by Little, rather than by Taylor or Killian. In any event, the forms were signed on 10 April 1981 and mailed to Little who mailed them to American Defender's Raleigh office. American Defender began processing the reinstatement application on 17 April 1981 and granted it on 22 April 1981.

The reinstatement form signed by Killian asked the following questions:

11. Have you
    (a) Ever been admitted to, or been a patient in, a clinic hospital or institution for examination, observation, treatment or surgical operation?

    *    *    *    *

12. Have you ever had or been suspected of having any of the following:
    . . . cancer . . . ?

13. Have you within the past 10 years consulted a doctor for any cause not mentioned in this Certificate?

14. Are you now in good health? If answer is "no", give details.

American Defender contends that Killian answered the first three questions "no" and the final question "yes" in spite of the fact that shortly before 10 April 1981 he had been examined by Dr. H. Vann Austin on 12 March and 3 April 1981 at the Pine-

hurst Medical Clinic. Killian again saw Dr. Austin on 13 April 1981 who recommended that Killian undergo various laboratory tests. Some time between 15 April and 20 April 1981, Killian was told that the results of these tests indicated cancer. Killian was admitted to Moore Memorial Hospital on 20 April 1981 to determine the extent and origin of the cancer and any possible treatment. In anticipation and in preparation of Killian's hospitalization, Dr. Austin dictated the following History and Physical report:

> The patient was asked to come in the hospital for a workup because of a skin biopsy which suggested adenocarcinoma, metastatic . . . [He] has felt generally "poorly" for some weeks . . . [as if] "there is something wrong inside of me." His specific problem recently has been severe left shoulder pain since Christmas . . . [which] has recently worsened . . . The patient has had multiple skin lesions for some weeks, worsening on his face . . . He was seen by Dr. Rostan (dermatology) who biopsied one of these lesions with the biopsy suggesting adenocarcinoma.

On 23 April 1981, insurance agent George Little met with David Williams, the certified public accountant who had been preparing the buy-sell stock agreement involving Killian, Taylor, and Southeastern Asphalt. During their conversation, both Little and Williams indicated that they understood that Killian was seriously, and quite possibly, terminally ill. According to Williams, Little stated that "everything was in order with the insurance policies and that there would be no problem with them." Phyllis Taylor also stated that before she entered into the stock purchase agreement she asked Little if there would be any problem with the life insurance policy on Killian being honored. Little replied that he did not know of any reason why there would be a problem. On 27 May 1981, the stock purchase agreement was entered into by Killian, Taylor, and Southeastern Asphalt. Had Little not given these assurances, Williams asserts that he would have advised Taylor not to enter into the agreement and Mrs. Taylor claims she would not have entered into the agreement.

Jerry Killian died on 6 July 1981. Pursuant to the buy-sell agreement, the plaintiff became obligated to purchase Killian's stock from his estate. However, when the plaintiff attempted to

claim the benefits of the life insurance policy on Killian in order to buy his stock, American Defender denied coverage.

The only issue on appeal is whether the trial court properly granted summary judgment in favor of the defendants. G.S. 1A-1, Rule 56(c) states that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "The rule is designed to permit penetration of an unfounded claim or defense in advance of trial and to allow summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E. 2d 379, 381 (1975). The moving party, in this case the defendants, has the burden of showing that no material issues of fact exist. In rebuttal, the nonmovant must then set forth specific facts showing that genuine issues of fact remain for trial. *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E. 2d 363, 366 (1982).

The defendant-insurance company asserts that summary judgment in its favor was appropriate because a policy of life insurance may be avoided by a showing that an insured made representations which were material and untrue. *Tolbert v. Insurance Co.*, 236 N.C. 416, 72 S.E. 2d 915 (1952). With regard to materiality, the insurance contract itself provides:

> REINSTATEMENT: If this Policy lapses because of nonpayment it may be reinstated at any time within five years after default in premium payment *upon presentation of evidence of insurability satisfactory to us*, and payment of all past due premiums . . . . (Emphasis added.)

[1] As part of the evidence of insurability, the insured must submit an Application and Certificate of Insurability on which he must answer several health-related questions. The answers given to the questions relating to health on insurance forms are deemed material as a matter of law. *Eubanks v. Insurance Co.*, 44 N.C. App. 224, 231, 261 S.E. 2d 28, 33 (1979), *disc. rev. denied*, 299 N.C. 735, 267 S.E. 2d 661 (1980).

[2] The defendant-insurance company has also offered evidence through the affidavit of Dr. H. Vann Austin that at least one of

Killian's answers to these health questions was untrue. The reinstatement form specifically asked whether the insured has within the past ten years consulted a doctor for any cause not previously mentioned in the Certificate. Killian answered no, although he had previously, within a month's time, been examined three times by Dr. Austin for severe pain in his left shoulder, left knee and hip and for multiple skin lesions on his face which had continued to worsen. These doctor's visits were not mentioned on the Certificate. Furthermore, Dr. Austin's affidavit reveals that Killian had "felt 'poorly' for some weeks" prior to 17 April 1981, suggesting that Killian's positive response to the question on 10 April 1981 that he was now in good health was also untrue. Thus, the defendant-insurance company has met its burden of showing that no genuine issue of fact exists for trial by demonstrating through its forecast of the evidence that it may avoid paying on the life insurance policy. It has produced evidence that Killian's answers to the reinstatement form's health questions were material and false. It did not have to further show that the falsehoods were fraudulently made with an intent to deceive. *Tolbert, supra,* at 418, 72 S.E. 2d at 917.

[3] In rebuttal, the plaintiff contends that under North Carolina law an insurer cannot avoid its obligations under a policy when the false answers in the insurance application were inserted by the insurance agent without first propounding any of the questions to the insured. *Heilig v. Insurance Co.*, 222 N.C. 231, 22 S.E. 2d 429 (1942); *Mathis v. Minnesota Mutual Life Insurance Company*, 302 F. Supp. 998 (M.D.N.C. 1969) (interpreting North Carolina law). As the record reveals, there is a sharp disagreement between the parties with respect to the facts surrounding the signing of the reinstatement form. The defendant-insurance company through the affidavit and deposition of George Little claims that between 1 April and 10 April 1981 Little went to the plaintiff's office, asked Killian the questions included on the reinstatement form, and checked the appropriate box on the form in accordance with Killian's answers. In his deposition, Little testified that he left the form at the office completed but unsigned to be mailed to him with the necessary premium check. The plaintiff on the other hand produced evidence through the affidavits of Pamela Calder and Sandra Cooper, office workers at Southeastern Asphalt, and by the deposition and affidavit of

Phyllis Taylor that Little did not visit Killian at their office at any time before the reinstatement form was signed on 10 April 1981. Rather, according to Taylor, the reinstatement form was blank when received in the mail from Little, dated by her, signed in blank by Killian, and mailed back to Little.

Because of their divergent stories, the plaintiff contends that a genuine issue of fact exists as to whether Little filled in the reinstatement form after Killian had signed it but without ever discussing the form's health-related questions with him. We must agree. The question of whose story is to be believed must be left for the jury's determination. Because a forecast of the plaintiff's evidence does demonstrate that a genuine issue of fact remains for trial, we hold that summary judgment was improperly granted in favor of the defendant-insurance company.

[4]  However, we do hold that the summary judgment entered in favor of the defendant-insurance agent (and his insurance agency which was also named as a defendant) was properly granted. The defendant-agent in support of this motion offered as evidence his own deposition. Little testified that when he gave assurances to David Williams on 23 April 1981 and later to Phyllis Taylor that the policy would be honored, he had no reason to believe it would not be. Killian entered the hospital on 20 April 1981 and the policy was reinstated on 22 April 1981. Little stated that he did not know of Killian's unreported doctor's visits before the policy and reinstatement and that as far as he knew Killian was in perfect health. Little did learn after Killian was hospitalized that adenocarcinoma had been diagnosed, but did not know he was terminally ill until the first of July before Killian died on 6 July 1981.

The plaintiff on the other hand has failed to produce evidence that Little knew, or should have known, at the time he gave the assurances that the insurance company would question the reinstatement months later. Contrary to the plaintiff's assertion, there is no evidence that Little knew facts on which the insurance company would seek avoidance of the policy. Although Little's statements that he believed "there would be no problem" with the insurance policy may have induced Taylor and Williams to go ahead with the buy-sell agreement, the plaintiff has brought forth no evidence which tends to show that these statements were negligently or fraudulently made.

Summary judgment granted in favor of the defendant-insurance company is

Reversed.

Summary judgment entered in favor of the defendants, George W. Little and his insurance agency, George W. Little and Associates, Inc., is

Affirmed.

Judges HILL and BECTON concur.