Valjeane SIMPSON, Plaintiff,

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Defendant.

No. 1:04 CV 00026.

United States District Court, M.D. North Carolina.

Feb. 28, 2005.

Stewart W. Fisher, Durham, NC, for Plaintiff.

Jeffrey A. Doyle, Raleigh, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Valjeane Simpson ("Plaintiff") filed this action in the General Court of Justice, Superior Court Division of Durham County, North Carolina, on November 13, 2003. Life Investors Insurance Company of America ("Defendant") removed the case pursuant to 28 U.S.C. § 1441, asserting this court's original jurisdiction under 28 U.S.C. § 1332 based on the diversity of citizenship of the parties. Plaintiff asserts a claim of breach of contract arising out Defendant's refusal to pay benefits under a life insurance policy upon the death of her husband, Donnie Simpson. Plaintiff also asserts a claim of negligence against Defendant for the conduct of its agent, Michael Braswell, for failure to properly complete the Simpsons' insurance application. Before the court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion will be granted.

## FACTS

Plaintiff and her husband met with Michael Braswell, an independent agent licensed by Defendant to sell its insurance products, on July 13, 2002, to apply for a life insurance policy on each of their lives. Braswell first met with Plaintiff alone, outside the presence of her husband, to gather her personal identification information and medical history as required to complete the insurance application. Rather than have Plaintiff read the application and complete it in her own writing, Braswell asked Plaintiff the questions written on the application, and recorded her responses himself. In general, Braswell paraphrased the questions instead of reading them precisely as they appeared on the application. The section of the application most relevant here reads as follows:

Have you or any proposed insured, ...

5. Within the past 10 years, been treated for or diagnosed by a health care professional as having (*If yes, circle applicable condition*):

a. Any disease or disorder of the blood or circulatory system (such as: heart disease, palpitations, heart murmur, or chest pain, high blood pressure, stroke, anemia), respiratory system (such as: emphysema, asthma, shortness of breath, or sleep apnea), brain or nervous system (such as: seizures, epilepsy, multiple sclerosis, mental illness or Alzheimer's disease), urinary tract (such as: kidney or blad-

der), reproductive system, stomach, intestine, liver (such as: ulcer, colitis, Crohn's disease, or hepatitis), endocrine system (such as: diabetes, thyroid), or muscles or bone (such as: arthritis, back problems, lupus)?

b. Cancer, cyst, or tumor?

c. Currently on any medication or being treated for any condition, not listed above.

d. Used drugs (such as: hallucinogens, barbiturates, excitants or narcotics) except as medication prescribed by physician, or been treated or counseled for drug or alcohol use?

6. Within the past 5 years,

a. Had or been advised to have a check-up, consultation, lab test, EKG, X-ray or other diagnostic test[?]

b. Been or is now fully or partially disabled?

c. Been charged with or convicted of any felony or been on probation?

To the right of each lettered question was a set of check boxes, one column labeled "Yes", the other labeled "No." On the following page the form provided a three-columned table, which provided space to list details related to any response of "Yes" given to the questions above.

In interviewing Plaintiff, Braswell checked "No" for all questions except 5a, as Plaintiff informed Braswell that she suffered from diabetes. Braswell recorded the details of Plaintiff's response in the space provided on the following page of the application, listing the question number to which the details corresponded, the name of the insurance applicant to which the answer pertained, and the specific information provided, namely that Plaintiff was diagnosed in 1999 with diabetes and took five milligrams of Glucotrol per day to treat it. Braswell also recorded the name and contact information of Plaintiff's doctor.

Plaintiff testified that, in addition to providing her identification information and medical history, she also provided to Braswell her husband's identification information and told Braswell that her husband suffered from diabetes, took the same medication as she did, and was treated by the same doctor. Braswell recorded Mr. Simpson's identification information but did not indicate on the application that Mr. Simpson suffered from diabetes. Braswell testified that he could not recall if Plaintiff informed him of Mr. Simpson's diabetes. After completing his questioning of Plaintiff, Braswell instructed her to sign the last page of the document. Plaintiff did so without reading the questions previously asked of her or the answers recorded by Braswell.

Mr. Simpson then joined Plaintiff and Braswell. Plaintiff has given conflicting testimony about the discussion between her husband and Braswell, which she heard in its entirety. Upon examination by Defendant's attorney, Plaintiff stated that Braswell asked her husband Question 5a in full, but failed to ask any other questions, preferring instead to discuss Mr. Simpson's golf career. Plaintiff testified that although Braswell, in asking Question 5a, mentioned diabetes, he and her husband did not discuss Mr. Simpson's diabetes, his treating physicians, or his medications. Plaintiff stated specifically that Braswell never asked her husband about any medications he was taking. Upon questioning by her attorney, however, Plaintiff recalled that Braswell did in fact ask her husband if he had diabetes, and Mr. Simpson not only informed Braswell that he suffered from the disease, he also showed Braswell the bottle that contained the medication he used to treat it. Braswell, for his part, denies that Mr. Simpson informed him of his diabetes, contending that he specifically asked Mr. Simpson the health-related questions on

the application and that he would have recorded the information of Mr. Simpson's diabetes if it had been provided to him. He does not, however, dispute that Plaintiff may have informed him of her husband's diabetes before Mr. Simpson joined them.

Less murky is the fact that neither Plaintiff nor Mr. Simpson informed Braswell that Mr. Simpson, within the time period covered by the questions on the insurance application, had been diagnosed and treated for a condition known as gynecomastia, which is an abnormal swelling and/or pain in the male breast tissue. This information was pertinent to Questions 5c and 6a as stated above. At the conclusion of the discussion with Braswell, Mr. Simpson signed the application without reading any of the questions or answers recorded by Braswell.

Braswell submitted the application to Defendant, whose underwriters approved the application and issued a policy covering the lives of both Plaintiff and Mr. Simpson for an initial amount of $90,000. Less than one year after the policy was issued, Mr. Simpson was struck by a car on the interstate and died. Because his death occurred within two years of the issuance of the policy, Defendant, pursuant to North Carolina law, conducted an investigation into the information provided on his insurance application. Defendant discovered that Mr. Simpson suffered from diabetes and gynecomastia, neither of which were revealed in the application, and rejected Plaintiff's claims for benefits under the insurance policy. Plaintiff seeks $90,000, the face amount of the policy, alleging breach of contract by Defendant. Plaintiff also seeks from Defendant an additional $10,000 for damages resulting from Braswell's negligence in completing the insurance application.

## DISCUSSION

Summary judgment must be granted when the pleadings, responses to discovery, and the record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on all relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment may simply argue the absence of evidence by which the non-moving party can prove her case). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. However, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

"A representation in a life insurance application is material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract and accepting the risk." *Ward v. Durham Life Ins. Co.*, 325 N.C. 202, 210, 381 S.E.2d 698 (1989). "Moreover, in an application for a life insurance policy, written questions and answers relating to health are deemed ma-

terial as a matter of law." *Id.* (citing *Rhinehardt v. North Carolina Mut. Life Ins. Co.*, 254 N.C. 671, 673, 119 S.E.2d 614 (1961)). It is undisputed that neither Plaintiff nor Mr. Simpson revealed to Braswell that Mr. Simpson, within the time period covered by the questions on the insurance application, had suffered from, undergone consultations for, and received treatment and medication for gynecomastia. It is indisputable that gynecomastia is a matter related to Mr. Simpson's health, and the failure to provide information related to the condition in the written answers to the insurance application is a false representation by omission. Under North Carolina law, "a policy of life insurance may be avoided by showing that the insured made representations which were material and false." *Id.* at 210, 381 S.E.2d 698. Thus, because of the omitted information related to Mr. Simpson's gynecomastia, Defendant may properly avoid Plaintiff's claim for benefits under the policy.[1]

■ Plaintiff contends, however, that there is a genuine issue of material fact as to whether Braswell ever asked Mr. Simpson the relevant health-related questions on the application, specifically Questions 5c and 6a, which would have elicited from him the information related to his gynecomastia. A line of cases in North Carolina provides that "an insurer cannot avoid its obligations under a policy when the false answers in the insurance application were inserted by the insurance agent without first propounding any of the questions to the insured." *Southeastern Asphalt & Concrete Co. v. American Defender Life Ins. Co.*, 69 N.C.App. 185, 190, 316 S.E.2d 311 (1984) (citing *Heilig v. Home Security Life Ins. Co.*, 222 N.C. 231, 22

S.E.2d 429 (1942), and *Mathis v. Minnesota Mut. Life Ins. Co.*, 302 F.Supp. 998 (M.D.N.C.1969)). In *Mathis* the party to be insured signed a blank application that was later completed by the agent and submitted to the insurance company without review by the applicant. In *Heilig,* the agent never spoke with or even met the party to be insured. Instead, he asked the insured's parents some, but not all, of the questions on the application, and then filled in the answers to the unasked questions himself. The Supreme Court of North Carolina held that "the answers to [the unasked] questions, if inserted by the agent, without the knowledge of the applicant, in the absence of fraud or collusion between the insured and the agent, will not vitiate the policy of insurance issued pursuant to the information contained therein." *Heilig v. Ins. Co.*, 222 N.C. at 233, 22 S.E.2d 429. Thus, Plaintiff argues, because Braswell provided false answers to questions he never asked Mr. Simpson, Defendant cannot properly refuse payment of benefits under the policy.

In each of the cases cited by Plaintiff, the deciding court found, essentially, that the insured party had no opportunity to discover and cure the defects in the application, and therefore should not be held responsible for them. Another line of cases under North Carolina law reaches the opposite outcome when the insured party did have the opportunity and ability to discover and cure similar faulty answers in an insurance application. In one early case, the North Carolina Supreme Court refused to admit Plaintiff's evidence that he signed the insurance application without knowing that it contained questions the agent had not asked, stating that "in the absence of fraud or mistake, a party will

---

1. Because the failure to reveal Mr. Simpson's gynecomastia is undisputed, the court need not reach the issue of whether Plaintiff or Mr. Simpson informed Braswell of Mr. Simpson's diabetes, and, in turn, whether such knowledge on Braswell's part is properly imputed to Defendant.

not be heard to say that he was ignorant of the contents of a contract signed by him." *Cuthbertson v. North Carolina Home Ins. Co.*, 96 N.C. 480, 486, 2 S.E. 258 (1887). Similarly, the Supreme Court of North Carolina later held that an insured party was bound by the false representations in his application when he signed the completed form without reading it, even though the answers were provided not by him, but by an agent of the company. The court stated that in signing the document the applicant adopted the answers as his own, and that "however innocently he may have acted" he could not enforce the contract against the insurance company. *Equitable Life Assurance Soc. v. Ashby*, 215 N.C. 280, 285, 1 S.E.2d 830 (1939). This court noted in *Mathis* that it was significant to the *Cuthbertson* and *Ashby* courts' rulings that "the application had already been completed by the agent for the insurance company when it was signed by the plaintiff." *Mathis v. Minnesota Mut. Life Ins. Co.*, 302 F.Supp. 998, 1001 (M.D.N.C. 1969) (distinguishing the case before it from *Cuthbertson* and *Ashby* because the applicant in *Mathis* signed a blank application that was later completed by the agent without consulting the applicant). The Supreme Court of North Carolina in *Jones v. Home Sec. Life Ins. Co.* gave approval "to the statement appearing in 29 A *Am.Jur.* 236 that 'the rule that the insured is not responsible for false answers in the application where they have been inserted by the agent through mistake, negligence, or fraud is not absolute, and applies only if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud.'" *Jones v. Home Sec. Life Ins. Co.*, 254 N.C. 407, 413, 119 S.E.2d 215 (1961). In *Jones* the court noted, in ruling that the insurance policy issued on the basis of a materially false application was not enforceable against the insurance company, that:

Plaintiff neither alleges nor testifies that the agent for the insurance company in fact knew that the insured suffered from chronic asthma. There is no allegation or evidence suggesting illiteracy on the part of the insured or her inability to fully comprehend each of the questions appearing on Part II of the application. Her signature is neat and legible. There is neither allegation nor evidence suggesting that the insured was prevented from reading the questions or answers by any trick or device. The allegation stops with the assertion that the answers were not in fact written by the insured nor were the questions propounded to her.

*Id.* at 411, 119 S.E.2d 215.

■ The factor distinguishing the cases relied upon by Plaintiff from the *Cuthbertson–Ashby–Jones* line of cases is that the applicants in the former group were "justifiably ignorant of the untrue answers" inserted in the application by the agent "through mistake, negligence, or fraud." The circumstances of Plaintiff's application, however, are virtually identical to those of the latter group of cases in which no such justifiable ignorance was found. While Braswell may well have acted negligently in questioning the Simpsons and completing the application, there nonetheless is no evidence of "any trick or device" employed by Braswell to prevent Plaintiff or her husband from reading the application nor is there any question that Plaintiff, who holds a masters degree, and her husband were both literate and physically able to read the application. All Plaintiff alleges is that, as in *Jones*, Braswell failed to ask some of the questions stated in the application, and that Braswell, and not she or her husband, provided the answers to the questions. The Simpsons' ignorance of the material misrepresentations concern-

ing Mr. Simpson's gynecomastia, therefore, is not justifiable.

◼ Plaintiff also asserts Defendant's liability for damages resulting from Braswell's negligence in completing the insurance application. Cases cited by Plaintiff establish that:

> where an insurance agent or broker undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes on him the duty, in the exercise of reasonable care, to perform the duty he has assumed and within the amount of the proposed policy he may be held liable for the loss properly attributable to his negligent default.

*Harrell v. Davenport,* 60 N.C.App. 474, 477, 299 S.E.2d 308 (1983); *see also R–Anell Homes, Inc. v. Alexander & Alexander, Inc.,* 62 N.C.App. 653, 303 S.E.2d 573 (1983). Plaintiff also cites a case establishing a cause of action in negligence against insurance agents for giving negligent advice concerning the extent of coverage under the insured's policy, if actually procured. *See Johnson v. Smith,* 58 N.C.App. 390, 293 S.E.2d 644 (1982). Although the court expresses no opinion on the matter, such case law may suggest grounds on which Plaintiff may bring an action against Braswell, but there is no basis in the cases cited by Plaintiff to support a cause of action in negligence against Defendant.

Instead, the law of agency governs in determining whether Defendant is liable for the negligence of its agent, Braswell. Thus, the initial question under agency law is whether Braswell was an independent contractor or an employee of Defendant such that the doctrine of *respondeat superior* may apply. Hallmarks of an independent contractor, rather than an employee, include:

> the person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistance as he may think proper; (g) has full control over such assistance; and (h) selects his own time. The presence of no particular one of these indicia is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee.

*Hayes v. Bd. of Trustees,* 224 N.C. 11, 29 S.E.2d 137 (1944).

◼ The evidence on the record establishes that Braswell was merely an independent contractor and not an employee of Defendant. Braswell was an independent agent, licensed by several insurance companies to sell their products. He owned and managed his own business, kept his own hours, and, unfortunately in this case, was free to adopt his own methods in dealing with his customers. Furthermore, Braswell earned no salary from Defendant, only commissions, and there is no evidence that he was eligible to participate in Defendant's health or retirement benefit plans. *See Little v. Poole,* 11 N.C.App. 597, 600, 182 S.E.2d 206 (1971); *see also Harrell v. Davenport,* 60 N.C.App. at 478, 299 S.E.2d 308. Braswell had no authority to issue insurance policies on behalf of Defendant, nor did he make any promise or guarantee to Plaintiff and her husband that their application would be accepted. Braswell operated solely to fa-

cilitate the formation of contracts between the Defendant and applicants, and Defendant in no way controlled Braswell's operations or the means by which he sought and dealt with his customers. "A life insurance agent who is employed solely to bring about contractual relations between his principal and others on his own initiative, without being subject to the principal's direction as to how he shall accomplish results, is ordinarily held to be an independent contractor." *Little v. Poole*, 11 N.C.App. at 602, 182 S.E.2d 206. Because Braswell is an independent contractor, and not an employee of Defendant, Defendant cannot be held liable under the doctrine of *respondeat superior* for the negligent actions of its agent.

## CONCLUSION

The misrepresentations in Plaintiff's insurance application regarding Mr. Simpson's gynecomastia are material as a matter of law, and, even if Braswell failed to propound the proper questions to Plaintiff and Mr. Simpson, their ignorance of the misrepresentations is not justifiable. Furthermore, Defendant is not liable for negligence committed by its agent in completing Plaintiff's insurance application. Therefore, for the reasons set forth in this opinion, the court will grant Defendant's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion for summary judgment [Doc. # 6] is GRANTED, and this action is DISMISSED with prejudice.