I. H. EUBANKS, ADMINISTRATOR OF THE ESTATE OF JAMES ELLIS
   "BILLY" EUBANKS v. FIRST PROTECTION LIFE INSURANCE COM-
   PANY

No. 794SC79

(Filed 18 December 1979)

**1. Rules of Civil Procedure § 7— pleading not counterclaim—reply not required**

Plaintiff's failure to file a reply to defendant's purported "counterclaim"
did not operate as an admission of the facts alleged therein where defendant's
pleading did nothing more than raise an affirmative defense to plaintiff's cause
of action to which a reply was neither required nor permitted by G.S. 1A-1,
Rule 7(a). G.S. 1A-1, Rule 8(c) and (d).

**2. Insurance § 37— action on life insurance policy—prima facie case**

Defendant insurer's admission in the pleadings of execution and delivery
of a policy of credit life insurance, payment of premium, and death of the in-
sured established plaintiff's prima facie case in an action on the policy, and the
burden was then on defendant to prove its allegations of false and material
representations justifying its refusal to pay benefits.

**3. Rules of Civil Procedure § 9— action by administrator—failure to allege authority—amendment at close of evidence**

Plaintiff administrator's failure to make an affirmative averment in the
complaint showing his capacity and authority to sue as required by G.S. 1A-1,
Rule 9(a) was cured by amendment at the close of the evidence in the trial.

**4. Insurance § 2; Principal and Agent § 5.2— admission of agency in interrogato-
ries—evidence of agent's acts**

Where defendant insurer admitted in its answer to interrogatories that a
car dealer had authority to enroll eligible debtors under a master group policy
of credit life insurance, defendant cannot complain of evidence of the car
dealer's role as defendant's agent in the execution of the credit life insurance
policy issued to the insured.

**5. Insurance § 21— prior credit life insurance coverage—irrelevancy to incontest-
ability clause**

In an action to recover under a policy of credit life insurance, evidence of
prior, expired policies of credit life insurance issued by defendant to the dece-
dent were not admissible to establish that defendant had continuously covered
decedent for a period exceeding two years and was therefore barred by the
policy's incontestability clause from raising the defense of misrepresentation.

6. **Insurance § 18.1— credit life insurance—misrepresentations as to medical treatment—instructions not presented by evidence**

In an action on a credit life insurance policy in which defendant denied liability on the ground of misrepresentations by insured concerning medical treatment within a year prior to the application, the court's instruction that twelve months may reasonably be understood "to mean approximately twelve months" was not presented by the evidence and was thus erroneous where defendant's uncontradicted evidence showed that insured received the medical treatment within six months of the date of his application, a time span which could not reasonably be equated with "approximately twelve months." Similarly, the court's instruction that a representation on an application for insurance that the applicant is in good health does not require that he be in perfect health, and that a representation that the applicant does not suffer from a particular disease is not necessarily false merely because the applicant does not have that disease was erroneous as not being presented by the evidence since the provision in question referred to whether the applicant had been treated for, or advised to have treatment for, certain listed diseases, not whether he knew the state of his own health or of his affliction with a particular disease.

7. **Insurance § 18.1— credit life insurance—misrepresentation of medical treatment—instruction on materiality**

In an action on a credit life insurance policy, the trial court erred in instructing the jury that a misrepresentation in an application for an insurance policy will prevent recovery on the policy if it is "false and material" where the alleged misrepresentation related to medical treatment and was thus material as a matter of law.

APPEAL by defendant from *Strickland, Judge.* Judgment signed 23 October 1978 and filed 24 October 1978 in Superior Court, JONES County. Heard in the Court of Appeals 26 September 1979.

This action was originally brought in the name of James Ellis Eubanks, by I. H. Eubanks, against First Protection Life Insurance Company to recover $20,000.00, the benefits of a credit life insurance policy issued by the defendant Company effective 7 February 1977 on the life of James E. Eubanks. In the complaint plaintiff alleged the execution of the policy payable to R & W Chevrolet Co., Inc. and in the alternative to the Estate of James Ellis Eubanks, payment of premium, the death of the insured on 26 April 1977, submission of proof of death of the insured, demand for payment, and defendant's refusal to pay. In addition, plaintiff alleged that for at least two years prior to plaintiff's intestate's death, defendant had issued credit life insurance policies on James E. Eubanks's life. In its answer, defendant admitted the is-

suance of a $20,000.00 credit life insurance certificate on the life of James E. Eubanks, the first beneficiary being R & W Chevrolet Company, Inc., and the second beneficiary being the Estate of James Ellis Eubanks. Defendant further admitted receipt of proof of the death of the insured, but alleged in what was captioned a "counterclaim" that in his application for insurance the insured had made material representations concerning medical treatment which were false, and that the claim was denied because of the misrepresentations. Refund of the premium had been tendered but refused. Included in the answer was a motion to dismiss, which the court subsequently denied.

On 25 July 1978 defendant moved for summary judgment on the ground that there was no genuine issue as to any material fact, and on 9 August 1978, plaintiff made a similar motion. Both motions were denied, and the case came on for trial at the 18 September 1978 term of Superior Court in Jones County.

Plaintiff presented evidence at trial that on 1 October 1976 plaintiff's intestate, James Ellis Eubanks, purchased a tractor-trailer from R & W Chevrolet Company, Inc. The purchase was financed through GMAC. The financing contract on the 1 October 1976 purchase was due 1 January 1977. Because plaintiff's intestate was unable to pay the $31,475.76 owing on the contract on 1 January, he agreed in early February to pay $5,000.00 on the account, and a credit life insurance policy was drawn up within a week. Application for the policy was signed by him some time prior to 7 February 1977. At the time it was signed, the manager of R & W Chevrolet was present. He did not read the application to the insured, and he could not testify that the insured did in fact read the application before signing it. The application contained the following provision above the signature line:

(3) To the best of my knowledge and belief during the past year, I have not been treated for, nor have I been advised to have treatment for any of the following except as stated below.

Any disease of the heart, or any disease of the circulatory system, high blood pressure or cancer or other malignant neoplasm or leukemia or uremia or any disease of the kidney or diabetes or tuberculosis, or emphysema, or any disease of the lungs, or cirrhosis of the liver or alcoholism.

Below that statement was a space in which the applicant was to list diseases and conditions. On the application in question, nothing was listed. The policy also contained an incontestability clause which stated:

> Except for Non-Payment of Premium this Certificate shall be incontestable after it has been in force during the lifetime of the Insured Debtor for a period of two (2) years from the effective date of the Certificate. No statement made by any person insured under the Certificate relating to his insurability shall be used in contesting the validity of the insurance covering such person after such insurance has been in force for a period of two years during such person's lifetime and prior to the date on which the claim arose.

The remainder of the application, which called for information on the amount of insurance, the premium, and the terms of payment, was not filled in until some time after the insured signed, because R & W Chevrolet had not yet received the necessary figures from GMAC.

Evidence was also admitted, over defendant's objections, of three earlier credit life insurance policies issued by defendant to plaintiff's intestate in connection with the financing of other purchases from R & W Chevrolet.

Defendant offered evidence to show that between 23 August 1976 and 8 October 1976, plaintiff's intestate was treated by his physician on a number of occasions for hypertension. On several of the occasions he was also treated for a urinary tract infection and a gastrointestinal ailment. He was experiencing high abdominal pain which was relieved by antacid. His physician testified that the insured was unconvinced during that time that he suffered from hypertension.

On 14 April 1977, the insured was admitted to the hospital with severe chest pains, and he died on 26 April 1977. The cause of death was acute myocardial infarction which resulted from arteriosclerotic cardiovascular disease caused by hypertension. The physician who treated him in the hospital testified that the insured told him that he had a history of hypertension.

Defendant's Vice-President of Claims testified that the Company received Eubanks' application some time after 7 February

1977. Had the Company known of his treatment for hypertension from August through October 1976, it would have conducted further investigation to determine insurability.

At the close of defendant's evidence, plaintiff was allowed to amend his complaint to allege his qualification as administrator of the Estate of James E. Eubanks. Defendant moved for a directed verdict, which motion was denied. The court submitted three issues to the jury, which answered them as follows:

> 1. Did the Plaintiff's intestate, James Ellis Eubanks, in his written application to the Defendant represent that to the best of his knowledge and belief during the past year he had not been treated for, nor had he been advised, to have treatment for any disease of the heart or any disease of the circulatory system or high blood pressure?

> ANSWER: No.

> 2. Was said representation false?

> ANSWER: No.

> 3. What amount if any, is the Plaintiff entitled to recover of the Defendant?

> ANSWER: $20,000.00.

Defendant's further motions for judgment notwithstanding the verdict and for new trial were denied. Defendant appeals from judgment on the verdict awarding plaintiff $20,000.00.

*Brock, Foy & Proctor, by Jimmie C. Proctor for plaintiff-appellee.*

*Hatch, Little, Bunn, Jones, Few & Berry, by David H. Permar and John McClain for defendant-appellant.*

PARKER, Judge.

[1] In its answer defendant captioned its allegations of false representations a "counterclaim." The Company now contends that plaintiff's failure to file a reply to that "counterclaim" operated as an admission of those allegations, entitling it to summary judgment or a directed verdict. The propriety of the trial court's denial of the motion for summary judgment is not proper-

ly before the court on this appeal. A motion for summary judgment is a pretrial motion which does not determine the merits. The effect of denial is merely to allow the case to go to trial. *Oil Co. v. Smith*, 34 N.C. App. 324, 237 S.E. 2d 882 (1977). As to the denial of the motion for directed verdict, if the Company's allegations had in fact set up a counterclaim, plaintiff's failure to reply would have operated as an admission of the facts alleged therein. G.S. 1A-1, Rule 8(d). However, we conclude that, in effect, defendant did nothing more than raise an affirmative defense to plaintiff's cause of action to which a reply was neither required nor permitted by G.S. 1A-1, Rule 7(a). G.S. 1A-1, Rule 8(c) provides: "When a party has mistakenly designated a defense as a counterclaim . . . , the court, on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Although defendant prayed in its "counterclaim" for cancellation of the policy, it was seeking no affirmative relief other than that which would naturally flow from successful defense to plaintiff's action on the insurance contract.

[2]   Neither was defendant entitled to a directed verdict on the grounds that the evidence established its defense as a matter of law. Defendant's admission in the pleadings of execution and delivery of the policy of credit life insurance, payment of the premium, and death of the insured established plaintiff's prima facie case. Thereafter, the burden was on defendant to prove its allegations of false and material representations justifying refusal to pay benefits. *Rhinehardt v. Insurance Co.*, 254 N.C. 671, 119 S.E. 2d 614 (1961); *Tolbert v. Insurance Co.*, 236 N.C. 416, 72 S.E. 2d 915 (1952). The evidence was insufficient to establish defendant's affirmative defense as a matter of law, and defendant's assignment of error directed to the court's denial of the motion for directed verdict is overruled. *See Huffman v. Insurance Co.*, 8 N.C. App. 186, 174 S.E. 2d 17 (1970).

[3]   Defendant also assigns error to the denial of its motion to dismiss on the grounds that the suit was not brought by a person having standing to sue and that the complaint failed to allege the administrator's legal capacity to sue. Prior to trial, plaintiff as a matter of right amended the caption of the complaint to read, "I. H. Eubanks, Administrator of the Estate of James Ellis "Billy" Eubanks". As administrator, I. H. Eubanks was the real party in interest entitled to sue on behalf of the estate. G.S. 1A-1,

Rule 17(a). Although it is true that plaintiff failed, as required by G.S. 1A-1, Rule 9(a), to make an affirmative averment showing his capacity and authority to sue, that error was cured by amendment at the close of the evidence in the trial. Under the liberal provisions of Rule 15(a), a party may amend his pleadings by leave of court even after the beginning of trial. The rule specifies that "leave shall be freely given when justice so requires." This is not a case in which the allegation was necessary to confer subject matter jurisdiction. In the absence of any showing of prejudice to the defendant, we fail to find any abuse of discretion on the part of the trial judge in allowing the amendment.

[4] Defendant next contends that the court erred in allowing the admission of evidence to show that the President of R & W Chevrolet and/or R & W Chevrolet were the agents of the defendant because no such agency was alleged in the complaint or in a reply. This contention is without merit. As already stated, defendant's "counterclaim" was no more than an affirmative defense and, by operation of Rule 8(c) of the Rules of Civil Procedure, the allegations therein were deemed denied. Plaintiff clearly was not required in its complaint to allege agency and estoppel on the part of the insurer when the answer raising the affirmative defense had not yet even been filed. Further, in answer to interrogatories filed by plaintiff, defendant admitted that R & W Chevrolet, although not a general agent of the Company, had authority to enroll eligible debtors under a master group policy of credit life insurance and to issue the Company's certificates. Having admitted this agency, the defendant cannot complain that plaintiff offered evidence concerning its agent's role in the execution of the policy issued to the insured.

[5] There is, however, merit to defendant's contention that the trial court erred in admitting statements of counsel, testimony, and exhibits relating to prior, expired certificates of credit life insurance issued to the insured. Plaintiff argues that these policies were admissible to establish that defendant had continuously covered plaintiff's intestate for a period exceeding two years and, therefore, was barred by the policy's incontestability clause from raising the defense of misrepresentation.

Plaintiff's Exhibits 1 & 2 were credit life insurance policies in the amount of $10,000.00 each which had been issued to the dece-

dent in 1975 in connection with the financing of truck purchases in that year. The second of the policies expired on 25 August 1976, and the financing contract which had been issued in connection with plaintiff's Exhibits 1 & 2 had been paid in full by the time plaintiff's exhibit 4, covering the account on the October 1976 purchase, was signed. Similarly, plaintiff's Exhibit 3, a credit life insurance policy issued on 1 August 1976 in the amount of $16,128.27 for a period of 6 months ending 1 February 1977 covered a different account from that covered by the February 1977 policy, and that contract also had been paid in full.

Moreover, the first two policies issued to the insured in 1975 required no debtor signature on the application and were in the amount of $10,000.00 each. They specified that the period of incontestability was one year. The third policy, plaintiff's Exhibit 3, was issued in the amount of $16,128.27. On the application for this policy, the debtor's disclosure of treatment for certain diseases, including high blood pressure, and his signature, were required. That policy expired on 1 February 1977, prior to the effective date of the policy sued on in this action. Each of the expired policies contained a statement in bold print that it was nonrenewable. To hold the defendant to the terms of the incontestability clause contained in the policy effective 7 February 1977, based on a theory of continuous coverage over a period of years, would require that we strain to convert expressly nonrenewable contracts which involved varying degrees of risk to the insurer into a single contract, contrary to the written expression of the parties' agreement. This the Court has no power to do. *See Lineberry v. Trust Co.*, 238 N.C. 264, 77 S.E. 2d 652 (1953). Therefore, evidence of prior policies was irrelevant to the principal issue in this lawsuit; that is, whether the insured had made a false representation in his application for a policy of credit life insurance which became effective on 7 February 1977, and its admission was error.

[6] There was also error in the court's charge to the jury. The burden on an insurer who seeks to avoid payment on a policy of insurance is to show that the insured made a statement which was material and false. *Tolbert v. Insurance Co., supra*. However, representations made in an insurance application in the form of written answers to written questions relating to health are deemed material as a matter of law. *Sims v. Insurance Co.*, 257

N.C. 32, 125 S.E. 2d 326 (1962); *Jones v. Insurance Co.*, 254 N.C. 407, 119 S.E. 2d 215 (1961); *Assurance Society v. Ashby*, 215 N.C. 280, 1 S.E. 2d 830 (1939). When instructing the jury on the issue of the falsity of the representation in this case, the court charged that "where the question [on an application] relates to a specific time period the representation is not necessarily false if it does not fall literally within that period. Twelve months may be reasonably understood by a reasonable person to mean approximately twelve months." Although the judge correctly stated a principle of law, the issue was not presented by the evidence in this case. Defendant's uncontradicted evidence shows that plaintiff's intestate had received medical treatment for high blood pressure in August, September and October of 1976, within *six* months of the date of his application, a time span which could not reasonably be equated with "approximately twelve months." Similarly, the judge charged the jury that a representation on an application for insurance that the applicant is in good or sound health does not require that he be in perfect health, and that a representation that the applicant does not suffer from a particular disease is not necessarily false merely because the applicant does have that disease. Again, such a charge did not involve the principles of law arising from the evidence presented in this case. The provision in the application here in question referred to whether the applicant had been *treated* for, or *advised to have treatment* for, certain listed diseases, not to whether he knew the state of his own health or of his affliction with a particular disease. An instruction relating to a factual situation of which there is no evidence is erroneous. *Dennis v. Voncannon*, 272 N.C. 446, 158 S.E. 2d 489 (1968); *Veach v. American Corporation*, 266 N.C. 542, 146 S.E. 2d 793 (1966).

[7]  At the same time that the court charged the jury on principles not arising on the evidence in the case, the court also erred in instructing the jury that "the law provides that a representation in an application for a policy of insurance will prevent a recovery on the policy and entitle the insurance company to rescind the policy if it is false and *material*," (emphasis added), without tendering the instruction which the defendant had requested in writing, that the representation in question was material as a matter of law. This charge is similar to that held to be reversible error in *Sims v. Insurance Co., supra.* In that case,

the trial judge referred to materiality in stating the contentions of the insurer in regard to false statements relating to health on an insurance policy. On review, the Supreme Court stated: "From this instruction the jury may well have concluded that it had the duty of passing upon the materiality of insured's answers to the questions in the application concerning her health. This is not the case. 'In an application for a policy of insurance, written questions relating to health and written answers thereto are deemed material as a matter of law.'" 257 N.C. at 40, 125 S.E. 2d at 332. Taken as a whole, the charge could only have been confusing to the jury and prejudicial to defendant.

For the errors noted above, the judgment appealed from is vacated and the case is remanded for a

New trial.

Chief Judge MORRIS and Judge MARTIN (Robert M.) concur.