MARY M. HARDY, INDIVIDUALLY; MARY M. HARDY, AS EXECUTRIX OF THE ESTATE OF PAUL HARRISON HARDY; AND THE ESTATE OF PAUL HARRISON HARDY v. INTEGON LIFE INSURANCE CORPORATION

No. 8617SC969

(Filed 5 May 1987)

1. Insurance § 18.1 — life insurance — misrepresentation as to health — written answers — materiality

   An insurer may avoid its obligations under an insurance contract by showing that the insured made false representations in his application and that the misrepresentations were material. Misrepresentations in the form of written answers to written questions relating to health are deemed material as a matter of law.

2. Insurance § 18.1 — life insurance — written misrepresentation as to health — instruction on materiality

   Where insured's answers were written for him on a life insurance application by a bank officer and insured looked over and signed the application, the trial court should have instructed the jury that if it found that insured falsely answered the application by failing to advise defendant insurer of a second operation for a squamous cell carcinoma, it should also find that such misrepresentation was material.

3. Insurance § 19 — life insurance — material misrepresentation — waiver of right to avoid policy — jury question

   In an action on a life insurance policy wherein the evidence tended to show that the insured made a material misrepresentation in the application by failing to advise defendant insurer that he had had a second operation for a squamous cell carcinoma, that defendant insurer learned from the insured's personal physician about the first operation for non-metastatic squamous cell carcinoma and about the large size of the lesion, and that the insurer knew that the insured did not reveal this condition in the application, a jury question was presented as to whether defendant insurer waived its right to avoid the policy for the misrepresentation by failing to make further inquiry by which it could have discovered the second operation and the pathologist's diagnosis of metastasis after such operation.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 6 May 1986 in SURRY County Superior Court. Heard in the Court of Appeals 2 March 1987.

Plaintiff filed this action on 10 April 1985, seeking payment for breach of contract by Integon of a life insurance policy on Paul Harrison Hardy, plaintiff's deceased husband. Plaintiff alleged also that defendant had tortiously breached the contract and sought recovery of general damages. In the alternative, plaintiff requested a return of payments actually made on the policy plus interest. Plaintiff also prayed for attorney's fees. Defendant denied any breach of contract, and counterclaimed for rescission, asserting that misrepresentations by plaintiff's decedent constituted a bar against recovery for any alleged breach of contract. In response to defendant's counterclaim, plaintiff denied allegations that plaintiff's decedent had misrepresented his health and, as a further defense, plaintiff asserted that any failure to disclose was harmless in view of defendant's constructive knowledge of Mr. Hardy's condition. The case went to trial before a jury.

Evidence at trial tended to show the following events and circumstances. In March of 1981, Mr. Hardy underwent an operation for removal of a silver-dollar sized lesion of the scalp. The area removed was so large that skin grafting was required. Dr. Ben Lawrence performed the procedure, and Dr. Smith, a pathologist, diagnosed the lesion as a "moderately differentiated squamous cell carcinoma." On 15 March 1983, Mr. Hardy's physician at N.C. Baptist Hospital reported Mr. Hardy to be free of cancer in his head and neck region. Dr. Lawrence testified that he probably advised Mr. Hardy after the March surgery that he had been successfully treated, although he would want to check him every 6 months or so. On or about 19 October 1981, during a follow-up visit, Dr. Lawrence found a small amount of tissue which required removal. In contrast to the original procedure, this second operation took place on an outpatient basis in the emergency room of the local hospital. The tissue was sent to Dr. Smith for diagnosis. In his pathology report, Dr. Smith wrote that the lesion was a "moderately differentiated squamous cell carcinoma, morphologically consistent with metastatic squamous cell carcinoma, skin and subcutaneous tissue of the lower scalp area."

Dr. Lawrence, however, disagreed with Dr. Smith's diagnosis. In his own opinion, there was no indication of metastasis, and he

felt that Dr. Smith's diagnosis was based primarily on his knowledge that there had been a previous growth. Dr. Lawrence did not treat Mr. Hardy as if he had metastatic carcinoma, and he never told Mr. Hardy of the pathology report. Nor did he ever inform Mr. Hardy that there was any cause for alarm.

On 25 November 1981, Mr. Hardy applied for a loan at the Bank of Pilot Mountain. A farmer with a ninth-grade education, Mr. Hardy was securing financing for his business for the next year. At the same time, he took out a life insurance policy. The bank officer, Mr. Badgett, took down his answers to the questions on the application and Mr. Hardy signed it. The answers to questions 1, 2, 3, 4 & 6 are as follows:

1. Question:    Name of personal physician?
   Answer:      Dr. Grymes—Mt. Airy.
   Question:    Date last consulted?
   Answer:      February—1981.
   Question:    Reason?
   Answer:      Checkup.

2. Question:    Have you ever had high blood pressure, a cancer, a tumor, diabetes, back or spinal disorder, an ulcer, any nervous disorder, any disease or disorder of the kidneys, stomach, heart, lungs, intestines, or liver? (If "yes," circle applicable ones)
   Answer:      No.

3. Question:    Have you consulted any other physician for any other illness or disorder in the last five years?
   Answer:      Yes.

4. Question:    Do you know of any impairment, disease, or disorder now existing in your health or physical condition?
   Answer:      No.

6. Question:    If the answer to Questions 2, 3, or 4, is "yes," give particulars and include any hospital ad-

Answer:
     mission and/or name and address of any attending physician.

Answer:    Mole Removed from Head March 1981—No Problems.

After Integon received the application, an Integon employee conducted a follow-up telephone interview. The employee, Kimberly H. Webber, spoke with Mrs. Hardy. Plaintiff and defendant differ on the substance of this conversation. Integon asserts that Mrs. Hardy stated that her husband had undergone no other operations than that in March 1981; Mrs. Hardy contends that she told Ms. Webber about the October 1981 procedure.

Another Integon employee, Dr. Burkhardt, wrote Dr. Grymes, Mr. Hardy's personal physician, and requested a summary and diagnosis of the March 1981 procedure. Dr. Grymes sent his office notes from May 1979 to March 1981; he also included Dr. Lawrence's notes of the March procedure and Dr. Smith's pathology report on the March tissue sample. These specified that the diagnosis was non-metastatic squamous-cell carcinoma. However, no reports of the October procedure were enclosed.

The carcinoma did in fact metastasize, and Mr. Hardy died on 22 October 1983. Only then, when a claim was filed, did Integon learn that Mr. Hardy's cancer had metastasized. Integon requested Dr. Lawrence's records and those of the hospital; after reviewing these records, Integon rescinded the policy and refunded the premiums.

The court submitted the following issues to the jury:

ISSUE 1:

Did Paul Harrison Hardy falsely answer the application by failing to advise the defendant of the October 26, 1981 operation?

ISSUE 2:

If so, was it material?

ISSUE 3:

Is Integon Life Insurance Corporation estopped from denying coverage?

The jury returned a verdict for plaintiff, answering the first issue "yes" but the second "no," not reaching the third issue. Judgment was entered, and defendant appealed.

*Max D. Ballinger for plaintiff-appellee.*

*Frazier, Frazier and Mahler, by Harold C. Mahler and James D. McKinney, for defendant-appellant.*

WELLS, Judge.

Defendant assigns error to the court's submission to the jury of the issue of materiality. We agree in principle.

[1, 2] It is settled in this State that an insurer may avoid his obligations under an insurance contract by showing that the insured made false representations in his application and that the misrepresentations were material. *Tolbert v. Insurance Co.*, 236 N.C. 416, 72 S.E. 2d 915 (1952); *Pittman v. First Protection Life Ins. Co.*, 72 N.C. App. 428, 325 S.E. 2d 287, *cert. denied*, 313 N.C. 509, 329 S.E. 2d 393 (1985). However, misrepresentations in the form of written answers to written questions relating to health are deemed material as a matter of law. *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E. 2d 326 (1962); *Rhinehardt v. Insurance Co.*, 254 N.C. 671, 119 S.E. 2d 614 (1961); *Eubanks v. Insurance Co.*, 44 N.C. App. 224, 261 S.E. 2d 28 (1979), *rev. denied*, 299 N.C. 735, 267 S.E. 2d 661 (1980). Whether the misrepresentations were made intentionally is not material. *See Huffman v. State Capitol Life Ins. Co.*, 8 N.C. App. 186, 174 S.E. 2d 17 (1970). Here, the questions and answers were written; although Mr. Hardy did not himself fill out the application, he did look over it and sign it. Under the facts of this case, while it was appropriate to submit the issue of materiality, the trial court should have instructed the jury that if they answered the first issue "yes," they should also answer the second issue "yes." *Sims, supra; Eubanks, supra.* However, that error does not, as defendant suggests in its second assignment of error, mandate reversal of the judgment for plaintiff. As indicated in our discussion *infra*, under the facts of this case, the issue of waiver and estoppel still remains.

[3] Pursuant to Rule 10(d) of the N.C. Rules of Appellate Procedure, plaintiff cross-assigns error as alternative grounds for support of the judgment that, even if the court did err in submit-

ting the issue of materiality to the jury, such error was not preju-
dicial to defendant since Integon had actual or constructive
knowledge of the October 1981 procedure and that defendant
therefore waived the condition in its application or was estopped
to deny coverage. Plaintiff submits that the evidence is un-
disputed that:

1. Integon knew that Doctor Lawrence, not Doctor Grymes,
had performed the surgical procedure disclosed on the ap-
plication;

2. Integon had before it Plaintiff's Exhibit 5 (App. pp.
118-127) which disclosed, among other findings:

a. The diagnosis of the "mole" removed in March, 1981,
was "Squamous cell Carcinoma."

b. The "mole" and tissue removed was silver dollar
size — too large to close — requiring skin grafting.

c. The "mole" or "lesion" extended to the margins of the
tissue removed indicating incomplete excision of the
tumor.

d. The "mole" or "lesion" was located on the scalp in an
area where such tumors usually do not occur, thus in-
dicating heightened probability of continuing problems.

e. The surgeon was of the opinion that Mr. Hardy would
have "to be watched thoroughly."

f. That Mr. Hardy was to be followed by the surgeon for
suture removal and *after care*.

Plaintiff also points out that Integon knew that Mr. Hardy had
wrongly answered "no" to the question of whether he had ever
had cancer; the reports received from Dr. Grymes clearly in-
dicated that insured had squamous cell carcinoma. Because Inte-
gon — even with knowledge of these facts — never contacted Dr.
Lawrence or the hospital until after Mr. Hardy's death, plaintiff
contends that defendant has waived, as a matter of law, its right
to avoid the contract. We disagree.

Although an insurance company may avoid liability where
there has been a material misrepresentation on the part of in-
sured, it cannot avoid liability on a policy on the basis of facts

known to it at the inception of the policy. *Cox v. Assurance Society*, 209 N.C. 778, 185 S.E. 12 (1936). Absent fraud or collusion, knowledge acquired by an agent while acting within the scope of his authority is imputed to the principal. *Thomas-Yelverton Co. v. State Cap. Life Ins. Co.*, 238 N.C. 278, 77 S.E. 2d 692 (1953).

In *Gouldin v. Ins. Co.*, 248 N.C. 161, 102 S.E. 2d 846 (1958), our Supreme Court further defined the law of waiver and estoppel as it applies to insurance contracts as follows:

> "In general, any act, declaration, or course of dealing by the insurer, with knowledge of the facts constituting a cause of forfeiture . . . which recognizes and treats the policy as still in force and leads the person insured to regard himself as still protected thereby will amount to a waiver of the forfeiture . . . and will estop the insurer from insisting on the forfeiture or setting up the same as a defense when sued for a subsequent loss. Such waiver may be inferred from acts as well as from words. Acts of an insurance company in recognizing a policy as a valid and subsisting contract, and inducing the insured to act in that belief and incur trouble or expense, is a waiver of the condition under which the forfeiture arose." 29 Am. Jur. Insurance, Sec. 832.

*Id.* In that case, the insured obtained policies of health and accident insurance without disclosing previous hospitalizations for barbiturate intoxication. After the policy was issued, insured was hospitalized again for reasons including barbiturate intoxication. Insured filed a claim, and in answer to the question whether he had had this disease before, stated, "Yes . . . 1952(?). Check claim records with your company." This claim was processed and paid. Plaintiff was later severely injured by a self-inflicted shotgun wound, and plaintiff's guardian filed a claim. The insurance company sought to avoid payment, first on grounds that plaintiff had attempted suicide and later on the basis that plaintiff had misrepresented the state of his health in his original application. Plaintiff brought suit, and the matter went to trial. The jury reached a verdict for defendant, finding that the shotgun wound was accidental, but that plaintiff misrepresented material facts in his application and that defendant did not waive its right of forfeiture.

On appeal, plaintiff argued the court should have allowed his motion for a peremptory instruction on the issue of waiver be-

---

---

cause the evidence showed as a matter of law that the company had knowledge of the misrepresentations before the gunshot incident took place and indeed had paid a claim, thus treating the policies as still in effect. Defendant contended that the answers were misleading and were not reasonably calculated to put defendant on notice as to the former hospitalization.

In its discussion of the notice aspects of waiver, the Court adopted the following rule:

> "Knowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer. The rule applies to insurance companies that whatever puts a person on inquiry amounts in law to 'notice' of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed." 16 Appleman, Insurance Law and Practice, p. 817.

*Id.* The court did not, however, find plaintiff's argument persuasive:

> Upon consideration of the foregoing arguments of the parties, we are constrained to the view that the relevant evidence, if believed, is sufficient to justify, though not to require, an affirmative answer, favorable to the plaintiff, on the issue of waiver. This being so, we conclude that the presiding Judge properly denied the plaintiff's motion for a peremptory instruction and submitted the issue of waiver as being controlled by open issues of fact to be determined by the jury. The rule is that where the evidence bearing upon an issue is susceptible of diverse inferences, it is improper for the presiding judge to give the jury a peremptory instruction. (Citations omitted.)

*Id.* We now apply these principles to the case at bar. Defendant knew that Mr. Hardy had squamous cell carcinoma and that it was a very large lesion; defendant also knew that Mr. Hardy did not reveal that condition on his application. These facts "constitute notice of whatever an inquiry . . . pursued with ordinary diligence and understanding would have disclosed." However, whether defendant should have further pursued its inquiry and discovered the second operation and the pathologist's diagnosis of

metastasis, or whether the efforts it made constituted a reasonable inquiry, is a question for the jury.

Plaintiff's remaining "cross-assignments" of error do not present alternative bases in support of the judgment, but assert errors in the trial not properly brought forward under Rule 10(d) and we therefore do not address them.

For the reasons stated above, there must be a

New trial.

Chief Judge HEDRICK and Judge BECTON concur.